**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

WILMA JEAN WILLIAMS,

                Plaintiff,

vs.                                                Case No.  8:11-cv-860-T-JRK

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____/

## **OPINION AND ORDER**[1]

### **I.  Status**

Wilma Jean Williams ("Plaintiff") is appealing the Commissioner of the Social Security Administration's final decision denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Plaintiff's alleged inability to work is based on arthritis, diabetes, asthma, nerve problems, and poor eye sight, as well as high blood pressure, bronchitis, radiculopathy, and muscle spasms.  Transcript of Administrative Proceedings (Doc. No. 13; "Tr." or "administrative transcript"), filed July 11, 2011, at 179, 194, 242.  On February 6, 2007, Plaintiff filed applications for DIB and SSI, alleging an onset date of November 8, 2005.  Tr. at 130-34, 135-41.  Plaintiff's applications were denied initially, Tr. at 87-89, 90-92, and were denied upon reconsideration, Tr. at 94-95, 96-98.

On May 7, 2009, an Administrative Law Judge ("ALJ") held a hearing at which Plaintiff and a vocational expert testified.  Tr. at 27-70.  At the time of the hearing, Plaintiff was fifty

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (Doc. No. 15), filed July 12, 2011; Reference Order (Doc. No. 16), entered July 13, 2011.

years old. Tr. at 33. The ALJ issued a written Decision on July 29, 2009, finding Plaintiff not disabled through the date of the Decision. Tr. at 13-26. After receiving additional evidence in the form of an evaluation completed by Gregory C. Marone, Ed. D. ("Dr. Marone"), a licensed psychologist, and incorporating that evidence into the administrative transcript, Tr. at 531-38, on February 17, 2011, the Appeals Council denied Plaintiff's request for review, Tr. at 2-4, thereby making the ALJ's Decision the final decision of the Commissioner. On April 20, 2011, Plaintiff commenced this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) by timely filing a Complaint (Doc. No. 1), seeking judicial review of the Commissioner's final decision.

Plaintiff raises three issues on appeal. The first is whether the Appeals Council "err[ed] by not vacating the ALJ's [D]ecision when newly submitted evidence renders that [D]ecision unsupported."[2] Brief of Plaintiff in Support of Her Social Security Appeal (Doc. No. 17; "Pl.'s Br."), filed September 9, 2011, at 1, 10-14. The second issue is whether "the ALJ's credibility assessment [of Plaintiff] fails to comply with the Commissioner's rulings." Pl.'s Br. at 1, 14-17. The third issue is whether the ALJ failed to fully "develop the record . . . [when] the ALJ failed to order a physical consultative exam despite a consultant's recommendation and [Plaintiff's] attorney's request." Id. at 1, 17-19. After a thorough review of the entire record and consideration of the parties' respective memoranda, the Commissioner's final decision is due to be affirmed for the reasons explained herein.

---

[2] Although Plaintiff identifies the Appeal Council's alleged error as "not vacating the ALJ's [D]ecision," Pl.'s Br. at 1, the language used by the Appeals Council is as follows: "We have denied your request for review . . . [after] consider[ing] the additional evidence," Tr. at 2 (capitalization and emphasis omitted). This difference in language does not affect the Court's analysis.

## **II.  The ALJ's Decision**

When determining whether an individual is disabled,[3] an ALJ must follow the five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations"), determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. §§ 404.1520, 416.920; see also Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004).  The claimant bears the burden of persuasion through step four and, at step five, the burden shifts to the Commissioner.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Here, the ALJ followed the sequential inquiry, but due to the ALJ's finding at step four, the ALJ was not required to, nor did he, proceed to step five.  See Tr. at 15-26.  At step one, the ALJ determined that Plaintiff "has not engaged in substantial gainful activity since November 8, 2005, the alleged onset date."  Tr. at 15 (emphasis and citation omitted).  At step two, the ALJ found Plaintiff suffers from "the following severe impairments: lumbar strain with radiculopathy, sciatica muscle spasm, musculoskeletal pains, non-insulin dependent diabetes, and depression."  Tr. at 15 (emphasis and citation omitted).  At step three, the ALJ ascertained Plaintiff "does not have an impairment or combination of impairments that meets

---

[3] "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." Tr. at 16 (emphasis and citation omitted).

The ALJ determined Plaintiff has the residual functional capacity ("RFC") to "perform the full range of medium work as defined in 20 CFR [§§] 404.1567(c) and 416.967(c)," with the following exceptions:

> [Plaintiff] can lift and/or carry 50 pounds occasionally and 25 pounds frequently. She can sit, stand and/or walk for 6 hours in an 8-hour workday. [Plaintiff's] depression resulted in mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace without episodes of decompensation. In addition, [ Plaintiff] is capable of simple routine repetitive tasks.

Tr. at 17 (emphasis omitted). At step four, the ALJ found Plaintiff "is capable of performing past relevant work as a cook, dietary aide, housekeeper, and cashier (checker)." Tr. at 25 (emphasis omitted). Therefore, the ALJ concluded Plaintiff "has not been under a disability . . . from November 8, 2005 through the date of th[e D]ecision." Tr. at 26 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence' . . . ." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard

is met when there is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Falge, 150 F.3d at 1322 (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)).  It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991) (internal quotation and citations omitted); see also McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988); Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).  The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence–even if the evidence preponderates against the Commissioner's findings. Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

As noted above, Plaintiff raises three issues.  Each is discussed in turn.

### A. Decision of the Appeals Council

Plaintiff's first assignment of error is directed at the Appeals Council's decision to deny Plaintiff's request for review. See Pl.'s Br. at 10-14.  Plaintiff's representative at the hearing, the same attorney representing her before this Court, submitted additional evidence to the Appeals Council that was not before the ALJ. See Tr. at 246-47 (letter to Appeals Council from Plaintiff's representative explaining submission of additional evidence).  The additional evidence was a report from Dr. Marone who performed a psychological consultation at the behest of Plaintiff's representative on August 18, 2009, more than three months after the ALJ's hearing and almost one month after the ALJ issued his Decision. See Tr. at 531-38. Plaintiff contends that Dr. Marone's report coupled with the remainder of the evidence in the

administrative transcript reveals that Plaintiff meets Listing 12.05(C), which describes the condition of Mental Retardation. As far as the undersigned can tell, Plaintiff raised the issue of whether she meets this listing for the first time in her request for review submitted to the Appeals Council.[4]

The Commissioner only contests whether the additional evidence is chronologically relevant. See Memorandum in Support of the Commissioner's Decision (Doc. No. 18; "Def.'s Mem."), filed November 8, 2011, at 5. The Commissioner's argument on the chronological relevance of the additional evidence consists of one sentence: "Because Dr. Marone did not evaluate Plaintiff until nearly a month after the ALJ issued his decision on July 29, 2009, his opinion provides little to no insight into Plaintiff's condition or adaptive functioning on or before the date of the ALJ's hearing decision." Def.'s Mem. at 5. Alternatively, the Commissioner argues that even accepting that Plaintiff has a valid IQ score, meaning an IQ score within the 60-70 range which satisfies one of Listing 12.05(C)'s requirements, Plaintiff "would still need to show that she had significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22, the developmental period." Id. (citations omitted). The Commissioner further notes that "without corroborating medical evidence, Dr. Marone's diagnosis of mild mental retardation is not sufficient to prove that Plaintiff's condition meets or equals Listing 12.05([C])." Id. at 5-6. In

---

[4] The ALJ did not specifically analyze Plaintiff's now-alleged mental retardation under Listing 12.05 presumably because Plaintiff did not list "mental retardation" as a basis of her alleged disability on either disability application or in any administrative form, nor did Plaintiff address any impairments related to her alleged mental retardation at the hearing. Other than Dr. Marone's report submitted to the Appeals Council after the ALJ's Decision was rendered, there is no diagnosis of mental retardation in the administrative transcript. The ALJ did, however, conclude Plaintiff does not meet any listing. Tr. at 16; see generally Keane v. Comm'r of Soc. Sec., 205 F. App'x 748, 750 (11th Cir. 2006) (unpublished) (recognizing that "[w]hile Appendix 1 must be considered in making a disability determination . . . [t]here may be an implied finding that a claimant does not meet a listing").

support, the Commissioner cites to various records in the administrative transcript that show "Plaintiff lacks the requisite deficits in adaptive functioning for mental retardation." Id. at 8.

To place the issue in context, the undersigned addresses the parties' contentions relating to the chronological relevance of the additional evidence before substantively analyzing this evidence.

### 1. Chronological Relevance

"The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if the [ALJ]'s action, findings, or conclusion is contrary to the weight of the evidence currently of record." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007) (quotation and citations omitted). When the Appeals Council considers new evidence but denies review, and a claimant then challenges the Appeals Council's denial, a reviewing court must determine whether the new evidence renders the denial of benefits erroneous. See id. at 1266-67; see also Kalishek v. Comm'r of Soc. Sec., 470 F. App'x 868, 868 (11th Cir. 2012) (unpublished); Coleman v. Comm'r of Soc. Sec., 454 F. App'x 751, 754 (11th Cir. 2011) (unpublished) (noting that "[t]he Appeals Council may deny review if the new evidence does not show the ALJ's decision to be erroneous").

Here, the Appeals Council accepted the additional evidence, considered the evidence, and made the evidence part of the administrative transcript. See Tr. at 2-4, 531-38. In doing so, the Appeals Council "found that [Dr. Marone's report] does not provide a basis for changing the [ALJ's D]ecision." Tr. at 3. In his report, as explained in more detail below, Dr. Marone provided a chronological, historical review of Plaintiff's mental health, as well as a

review of her present mental health.  In arriving at his diagnosis of mental retardation, Dr. Marone relied on Plaintiff's mental health history and her present mental health status.  It cannot be said that Dr. Marone's report reflects solely upon Plaintiff's mental health from the date of the report forward.  Rather, it is more likely that Dr. Marone's report and his diagnosis made therein are also relevant to the time period prior to the ALJ's Decision.  Therefore, the undersigned finds that Dr. Marone's report is chronologically relevant.  Because Plaintiff specifically challenges the Appeals Council's denial of review, this Court considers the additional evidence in determining whether the denial of benefits was erroneous.  See Ingram, 496 F.3d at 1258.

### 2. Substantive Analysis of Additional Evidence

The undersigned first summarizes Dr. Marone's findings made in the report submitted as additional evidence, then recites the applicable law, and lastly analyzes the issue.  Dr. Marone conducted a psychological consultation with Plaintiff on August 18, 2009. Tr. at 531. In Dr. Marone's report, he detailed Plaintiff's medical, social, and educational history. Tr. at 531-35.  Dr. Marone noted he was presented with "documentation of [Plaintiff's] learning problems, special education assistance, and noncompetitive academics." Tr. at 532.  He also recognized that Plaintiff's educational records "imply long term academic delays." Tr. at 533.

As to Plaintiff's social and adaptive functioning, Dr. Marone observed that Plaintiff can "select her own clothing and can dress herself independently[; s]he can button, fasten, zip, and tie"; and she can do "minimal housecleaning." Tr. at 533.  Plaintiff can also "bathe, shower, shampoo her hair, and toilet independently." Tr. at 533.  Further, Plaintiff is able to

"feed herself with knife, fork, and spoon," and "[s]he can operate a microwave and stove," although "her husband does the majority of the cooking." Tr. at 533. Dr. Marone opined that Plaintiff "knows basic money values but has difficulty in making change. . . . [Plaintiff] would have great difficulty in independently managing her finances." Tr. at 533.

During the consultation, Dr. Marone administered a Wechsler Adult Intelligence Scale in which Plaintiff "obtained a Verbal intellectual estimate of 67, and a Performance estimate of 72. This resulted in a Full Scale composite score of 65, which falls within the Mentally Deficient range of cognitive functioning, at the Mild level of mental retardation, and surpassing approximately 1 percent of her age group." Tr. at 534. As to her reading level, Dr. Marone opined Plaintiff "would be considered a non-reader." Tr. at 535. At the end of the report, Dr. Marone opined Plaintiff suffers from "dysthymia (consider early onset) superimposed on major depression, recurrent, severity level: mild/moderate[;] mental retardation[;] and physical limitations associated with medical conditions." Tr. at 536 (capitalization omitted). Dr. Marone concluded that Plaintiff's "current emotional and cognitive state d[o] not appear conducive to competitive employment. This, combined with reports of rather significant physical involvement, makes prognosis for return to long term employment quite poor." Tr. at 536.

Listing 12.05 describes the condition of Mental Retardation and the requirements at issue:

> 12.05 Mental Retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.

> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .
>
> C.  A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05.  This listing has been interpreted as requiring three elements–"a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22." Crayton v. Callahan, 120 F.3d 1217 (11th Cir. 1997); see Jordan v. Comm'r of Soc. Sec. Admin., 470 F. App'x 766, 766 (11th Cir. 2012) (unpublished) (reaffirming that "a claimant must demonstrate both subaverage intellectual functioning and deficits in adaptive functioning, as well as satisfying one of the additional criteria").

Here, while the additional evidence may provide a valid IQ score sufficient to meet one of the requirements of Listing 12.05, the evidence of record does not reveal, and Plaintiff has not shown, that she meets the other requirements of the listing. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (stating that "[f]or a claimant to show that his [or her] impairment matches a listing, it must meet all of the specified medical criteria"). The undersigned emphasizes "may" because there is other evidence, including a school record showing Plaintiff's IQ score as 76 at the age of 14, Tr. at 149, that could lead the ALJ, if this matter were to be remanded, to find that Plaintiff's IQ score in Dr. Marone's report is not conclusive. See Gray v. Comm'r of Soc. Sec., 454 F. App'x 748, 750 (11th Cir. 2011) (unpublished) (citing Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (recognizing that "a valid IQ

score need not be conclusive of mental retardation where the score is inconsistent with other evidence on the claimant's daily activities and behavior")).

Moreover, although Plaintiff was in special education classes, her secondary school records show, inter alia, that she possessed good ability to work with others or alone, Tr. at 152, 169, and good ability to count money and make change, Tr. at 169.  In a school record dated June 19, 1973, Plaintiff was observed as being "very slow doing any academic work but she perseveres despite the difficulty she has with the work."  Tr. at 152 (emphasis added).  When Plaintiff was 16 years old, it was noted that Plaintiff "seems to catch on quickly if time is spent with her."  Tr. at 170.  In his Decision, the ALJ even recognized "that [Plaintiff] had a special diploma, but that did not stop her from getting jobs over 25 years."  Tr. at 24.

Although not during the developmental period, Plaintiff was evaluated by two physicians who opined about Plaintiff's mental health.  On July 24, 2007, James Mendelson, Ph.D. determined "that while [Plaintiff] may have a mental impairment, it is not believed to be of disabling proportions."  Tr. at 385.  Also, on June 6, 2007, Steven K. Abraham, Psy.D. evaluated Plaintiff and noted Plaintiff "is capable of all of her activities of daily living."[5]  Tr. at 367.  Dr. Abraham further acknowledged that Plaintiff's "thought processes were logical and coherent" and Plaintiff's "level of insight and judgment were . . . adequate."  Tr. at 367.  Dr. Abraham opined that Plaintiff "appears to be functioning in the low average to borderline

---

[5] In addition to Dr. Abraham's recognition of the daily activities Plaintiff can perform, Dr. Marone's report summarizes Plaintiff's daily activities that she can independently perform, see Tr. at 533, and the ALJ explicitly found that Plaintiff only has "mild restriction" in activities of daily living, Tr. at 16.

-11-

range of intelligence." Tr. at 367. Dr. Abraham's diagnoses were generalized anxiety disorder and major depressive disorder. Tr. at 368.

Upon review of the additional evidence and the record as a whole, it cannot be said that the denial of benefits was erroneous. Even assuming Plaintiff has an IQ score between 60-70 and therefore assuming Plaintiff meets one requirement of Listing 12.05, the record as a whole does not support a finding that Plaintiff has "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.05; see generally Gray, 454 F. App'x at 750 (noting the ALJ could have found that the claimant did not suffer any deficits in adaptive functioning because he "took regular classes, was able to complete his work, and helped others with school subjects"; his "grooming and hygiene were normal, and [he] was able to follow simple commands and engage in social judgment and deductive reasoning"). The undersigned finds no error in the Appeals Council's decision denying review.

### B. Plaintiff's Credibility

As her second assignment of error, Plaintiff contends the ALJ failed to "evaluate all of the evidence and comply with the relevant rulings" in finding Plaintiff incredible. Pl.'s Br. at 14. Plaintiff argues that the ALJ improperly evaluated Plaintiff's testimony at the hearing regarding her ability to read and that the ALJ improperly evaluated Plaintiff's daily activities. Id. at 15-17.

"[T]o establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part showing: (1) evidence of an underlying

medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." Wilson, 284 F.3d at 1225 (citing Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)). "The claimant's subjective testimony supported by medical evidence that satisfies the standard is itself sufficient to support a finding of disability." Holt, 921 F.3d at 1223. Although "credibility determinations are the province of the ALJ," Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005), "explicit and adequate reasons" must be articulated if the ALJ discredits the claimant's testimony. Wilson, 284 F.3d at 1225; see also Dyer, 395 F.3d at 1210; Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) (stating that "after considering a claimant's complaints of pain [or other subjective symptoms], the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence").

"When evaluating a claimant's subjective symptoms, the ALJ must consider such things as: (1) the claimant's daily activities; (2) the nature, location, onset, duration, frequency, radiation, and intensity of pain and other symptoms; (3) precipitating and aggravating factors; (4) adverse side-effects of medications; and (5) treatment or measures taken by the claimant for relief of symptoms." Davis v. Astrue, 287 F. App'x 748, 760 (11th Cir. 2008) (unpublished) (citing 20 C.F.R. § 404.1529(c)(3)(i)-(vi)); see also 20 C.F.R. § 416.929(c)(3)(i)-(vi) (providing the same). A plaintiff's ability to participate in daily activities for a short duration, however, does not preclude a finding of disability. See Lewis, 125 F.3d at 1441 (finding that participation in everyday activities "such as housework and fishing" is insufficient to disqualify "a claimant from disability").

After detailing Plaintiff's testimony, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [ Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above [RFC]." Tr. at 18-19.  Then, the ALJ comprehensively detailed the medical evidence of record including, inter alia, hospital visits during which Plaintiff voiced specific complaints but no objective medical findings were made; treatment notes from Plaintiff's treating physician indicating Plaintiff's compliance with treatment was fair at times, poor at other times, and sometimes Plaintiff was non-compliant; and varying GAF scores, with significant improvement in 2008.  Tr. at 19-24.  The ALJ further "noted that [ Plaintiff] had a special diploma, but that did not stop her from getting jobs over 25 years."  Tr. at 24.

As another reason for discrediting Plaintiff's testimony, the ALJ found that Plaintiff's "demeanor at the hearing was suspicious of a person who was not telling the truth.  She said she was unable to read, on the other hand, she testified that she reads the Bible."  Tr. at 24. The ALJ's final reason for discrediting Plaintiff's testimony was that Plaintiff "described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."  Tr. at 25.  In support of that reason, the ALJ summarized Plaintiff's testimony at the hearing and cited to a Function Report completed by Plaintiff on May 5, 2007, both of which reflect Plaintiff's abilities and daily activities in her own words.  Tr. at 25.

Upon review of the record and consideration of the ALJ's discussion as a whole, the reasons given for not fully crediting Plaintiff are supported by substantial evidence.

Therefore, the undersigned finds no error regarding the ALJ's credibility determination of Plaintiff.

### C. Fully and Fairly Developing the Medical Evidence

Finally, Plaintiff contends the ALJ failed to fully and fairly develop the record because the ALJ did not order a physical consultative examination after the hearing as Plaintiff requested. Pl.'s Br. at 17-19. Plaintiff relies on Dr. Abraham's statement made in his report dated June 6, 2007 that recommends Plaintiff undergo "a thorough medical evaluation." Id. at 18 (citing Tr. at 366-68). Plaintiff suggests that recommendation, coupled with Dr. Marone's observation that Plaintiff's "emotional and cognitive state and 'rather significant physical involvement,'" required "the ALJ to secure the medical evidence missing from the file necessary to make an informed decision about [Plaintiff's] physical limitations rather than rely upon the claims of a record reviewer made two years earlier." See id. at 18-19.

The Commissioner counters that "the record already contains ample medical evidence regarding Plaintiff's physical impairments for the ALJ to make an informed decision." Def.'s Mem. at 14. The Commissioner points out that "Plaintiff has failed to show how the ALJ's failure to order a physical consultative examination prejudiced her." Id.

"It is well-established that the ALJ has a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) (citing 20 C.F.R. § 416.912(d)). "Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." Id. (citing 20 C.F.R. § 416.912(a), (c)). While "[t]he [ALJ] has a duty to develop the record where appropriate[,]" the ALJ "is not required to order a consultative examination as long as the

-15-

record contains sufficient evidence for the [ALJ] to make an informed decision." Ingram, 496 F.3d at 1269 (citing Doughty, 245 F.3d at 1281). Furthermore, to remand a case for the ALJ's failure to fully develop the record, there must be a showing that the claimant's right to due process has been violated because of such failure. Brown v. Shalala, 44 F.3d 931, 934-35 (11th Cir. 1995). Prejudice exists when the record contains evidentiary gaps which may cause the ALJ to reach an unfair determination due to the lack of evidence. Id. at 935.

Plaintiff had the burden at the administrative level of proving she was disabled. See Ellison, 355 F.3d at 1276 (citing 20 C.F.R. § 416.912(a), (c)). That Plaintiff did not carry this burden by obtaining other medical records herself does not amount to the ALJ abrogating his duty to fully and fairly develop the record. Further, Plaintiff submitted additional evidence to the Appeals Council relating to an alleged mental impairment. Had Plaintiff believed that the record contained evidentiary gaps regarding her physical impairments, she could have submitted additional evidence to that effect, or at the very least, Plaintiff could have specifically pointed to an alleged physical condition that she believes lacks support in the record. Plaintiff also does not allege that she is prejudiced by the ALJ's decision not to order a physical consultative examination. Upon review, no evidentiary gaps exist in the record, and the ALJ's Decision is supported by substantial evidence.

## V. Conclusion

After a thorough review of the record, the undersigned is convinced that the Commissioner's final decision is supported by substantial evidence. After due consideration, it is

**ORDERED**:

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g) and pursuant to 42 U.S.C. § 1383(c)(3) **AFFIRMING** the Commissioner's final decision.

2. The Clerk of Court is further directed to close the file.

**DONE AND ORDERED** at Jacksonville, Florida on August 9, 2012.

*James R. Klindt*
**JAMES R. KLINDT**
United States Magistrate Judge

jld
Copies to:
Counsel of record